(50 App. Div. 606.)

### HOUSMAN v. WRIGHT et al.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

1. FORECLOSURE SALE—INADEQUACY OF PRICE—RESALE.
   Where defendant has due notice of a foreclosure sale to be made, and is personally present at the sale, he cannot afterwards secure a resale on the ground that the price at the former sale was inadequate.
2. SAME—NEGLIGENCE OF DEFENDANT.
   Where defendant has due notice of a foreclosure sale to be made, and is personally present at the sale, his negligence in not having an attorney represent him in the sale is not sufficient ground to order a resale.

Appeal from special term, Richmond county.

Action by Jacob I. Housman against Garret P. Wright, individually and as executor, and another, to foreclose a mortgage given by defendant's testator. There was judgment of foreclosure, sale of the mortgaged property, and a deficiency decree. From an order granted on motion of defendants setting aside the sale and deficiency decree and ordering a resale, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and HIRSCHBERG, JJ.

Frederic A. Ward, for appellant.
John Hill Morgan, for respondents.

HIRSCHBERG, J. The action was brought to foreclose a $6,000 mortgage given by the testator of the defendant Garret P. Wright, executor. The property is real estate situated in the borough of Richmond. Letters testamentary were issued to the executor, March 24, 1896, and from that time until March, 1899, the attorney for the estate was Forrest L. G. Wright, the executor's son. In March, 1899, the executor alleges that he placed the law affairs of the estate in the keeping of the firm of Parker & Aaron, lawyers of No. 15 Wall street, borough of Manhattan, but that he told them they need not appear in this foreclosure suit, because he believed that his son and former attorney would so appear. He does not claim to have had any reason for so believing, excepting the fact that his son while attorney for the estate did appear in another foreclosure suit previously instituted. He and his son reside together, but there is nothing in the papers to indicate that they ever ex-

changed a word on the subject of this suit or of the sale. This action was begun March 21, 1899. It proceeded to judgment June 8, 1899, and thereafter a sale of the mortgaged premises was duly and regularly advertised to take place July 3, 1899. The defendant saw the advertisement on the 30th day of June, and personally attended the sale. He does not appear to have consulted any of his lawyers in the meantime, nor, as has been said, to have even spoken on the subject of the sale to his son, who he claims to have believed was representing him. At the sale the property was struck down to the plaintiff for $2,500, that being the only bid, and the defendant, though importuned, refusing to raise the bid. He did not ask for any postponement of the sale, nor claim to have been taken by surprise or at a disadvantage in any way. The sale resulted in the entry of a deficiency judgment against the estate, July 5, 1899, for $4,860.40, a transcript of which judgment was served on him July 13th. On August 18, 1899, the plaintiff sold the valuable part of the property in question to one Adam Gleckner for $1,800, and executed and delivered the deed on September 2, 1899. On the 9th of September, 1899, the defendant moved to vacate the sale, and for an order setting aside the deficiency judgment and decreeing a resale, which motion was thereafter granted. No proof was offered at the hearing tending to show that the property would bring more at a resale, nor was any bond given or offered conditioned to secure a higher bid than $2,500, nor did the defendant assert that he believed, or had any reason to believe, that the property on resale would bring any higher price than the sum at which it was struck down on the sale of July 3d.

The sole question presented on the appeal is whether inadequacy in price, coupled with the negligence of the party in interest, are sufficient grounds for the vacation of a judicial sale. As to the defendant's negligence, the statement of the facts in itself refutes any suggestion that this was adequate cause for requiring a resale. The plaintiff had given all the notice which the law requires, and although the defendant, by his own negligence, had failed to be represented by an attorney, he still had actual notice of the sale in ample time to appear and protect his interests if he could.

As to inadequacy of price, it has long been held that this is not sufficient ground for disturbing a judicial sale. In Livingston v. Byrne, 11 Johns. 555, the court said (page 566):

"A sale made at auction, and under process of law, ought not to be invalidated for mere inadequacy of price, without additional circumstances to justify it. This principle is stated by Lord Eldon on the rehearing of the case of White v. Damon, 7 Ves. 34, and in the case of Burrowes v. Lock, 10 Ves. 474. It is necessary to secure proper confidence on the part of purchasers at sales of this description, and to render titles, if fairly obtained, certain, and not liable to be impeached by the various opinions as to its value. In the case now before us, no allegation of fraud appears. There is no part of the respondent's conduct which will warrant the suspicion of unfairness. He was the highest bidder, in the presence and hearing of the appellant himself and of a number of other citizens, who might have enhanced the price upon him if they had been so disposed."

In McCotter v. Jay, 30 N. Y. 80, the court of appeals held that, where foreclosure proceedings were entirely regular and free from

fraud, they cannot be disturbed or set aside without some legal reason; and that want of knowledge of the time and place of sale on the part of one who was a party to the foreclosure suit, and was therefore bound to use due diligence in obtaining information of the sale in order to protect his rights, affords no sufficient reason. In Insurance Co. v. Oakley, 9 Paige, 259, it was held that, where property is regularly advertised and fairly sold by a master, a sale will not be set aside, and a resale directed, for the benefit of parties interested in the proceeds of the sale, to protect them against the consequences of their own negligence, where they are adults and competent to protect their own rights on the sale. In Wesson v. Chapman, 76 Hun, 592, 28 N. Y. Supp. 192, there appears to have been an offer to bid double the amount of the sale sought to be set aside, but the court said (page 596, 76 Hun, and page 195, 28 N. Y. Supp.):

"Mere inadequacy of price is not a ground for such relief, unless it be so great as to shock the conscience of the court, and raise the inference of unfairness or fraud, or unless there are circumstances of mistake or surprise. O'Donnell v. Lindsay, 39 N. Y. Super. Ct. 523; Kellogg v. Howell, 62 Barb. 280; Gould v. Gager, 18 Abb. Prac. 32; Tripp v. Cook, 26 Wend. 143; Insurance Co. v. Oakley, 9 Paige, 259."

In Farmers' Loan & Trust Co. v. Bankers' & M. Tel. Co., 119 N. Y. 15, 23 N. E. 173, the fact was regarded as influential that the applicant for a resale (page 23, 119 N. Y., and page 174, 23 N. E.) "did not offer to bid for the premises upon a resale any more than the purchaser had agreed to pay, or any sum whatever, and it did not show that any one would bid any more."

Here there was no irregularity in the proceedings. All the notice and advertisement required by law was given. The defendant who makes the application for a resale was personally present at the sale, refused to bid, and failed to ask for an adjournment. No claim is made that any higher price can be secured at a resale. No offer to bid higher is made, and no bond tendered to guaranty a higher bid. More than two months are allowed to elapse after the sale before application is made for a resale, during which time a portion of the property is sold by the purchaser to a bona fide vendee, and the only pretext offered by the applicant for a resale is the statement that he was mistaken in the belief that his own son, who lives with him, was attending to the suit in his behalf, although the son had not been asked to do so, and had been actually discharged as the attorney of the defendant before the suit was instituted. If, under such circumstances, sales could be set aside at the mere request of the negligent debtor, legal sales would, in the language of the court in Coudert v. De Logerot (Sup.) 30 N. Y. Supp. 114, 115, "become a farce, and, instead of encouraging persons wishing to purchase real estate at such sales, it would have the effect of preventing any property from being sold under the judgment of the courts." The order should be reversed.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur, except Woodward, J., absent.